# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **CHAD WILSON and MARTHA WILSON,** *Individually, and as next of friend for S.W.,* | § § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | **Civil Action No. 4:16-cv-00057-O** |
| **CITY OF SOUTHLAKE and RANDY BAKER,** *Individually,* | § § § | |
| **Defendants.** | § § | |

## <u>ORDER</u>

Before the Court is Defendants' Second Amended Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 51), filed March 24, 2017. The motion has been fully briefed and is ripe for review. *See* ECF Nos. 54, 57.

The Defendants moved to dismiss, or in the alternative, for summary judgment on all claims, stating that "the indisputable evidence conclusively negates, and leaves no genuine issue of material fact as to, Plaintiffs' allegations of statutory or constitutional violations against either Southlake Defendant." Defs.' Second Am. Mot. 1, ECF No. 51. Further, Defendants contend that they are entitled to summary judgment on "no evidence grounds" as to the issues of qualified immunity and sovereign immunity of Defendant Baker and Defendant Southlake, respectively. *Id.*

Having reviewed the motion, briefing, and applicable law, the Court finds that the Defendants' motion should be and is hereby **GRANTED** for the reasons stated below.

## I.    BACKGROUND

Unless otherwise noted, the following facts are undisputed. Plaintiffs Chad Wilson and Martha Wilson (collectively, "Plaintiffs"), individually and on behalf of their son S.W., bring this action against Defendants City of Southlake ("Southlake") and former Southlake Police Officer Randy Baker ("Officer Baker") (collectively "Southlake Defendants"), complaining of injuries that they suffered from a January 23, 2014 incident at Carroll Elementary School. Third Am. Compl. ¶¶ 18, 19, 40, ECF No. 48. At the time of the incident, S.W. was an eight-year-old second-grade student at Carroll Elementary School. *Id.* ¶ 25.

S.W. has autism, separation anxiety disorder, and oppositional defiant disorder. *Id.* ¶ 34. On October 8, 2013, Principal Stacy Wagnon ("Ms. Wagnon") reported to Child Protective Services ("CPS") that S.W. said he "wanted to suicide [sic] himself." *Id.* ¶ 35. In an October 9, 2013 incident report, Officer Brett Wilson ("Officer Wilson") reported that Ms. Wagnon relayed to him that S.W. was receiving counseling, but she did not tell him whether S.W. had undergone psychiatric testing. Defs.' Am. Mot., Ex. 3, ECF No. 26. In addition, Officer Wilson reported that S.W.'s parents had not given the school district a list of S.W.'s current treating physicians and medications, if any. *Id.* On October 9, 2013, Ms. Wagnon, Officer Wilson, Officer Baker, School Resource Officer ("SRO") Robert Slusser ("Officer Slusser" or "SRO Slusser"), Assistant District Superintendent Julie Thannaum ("Ms. Thannaum"), and Assistant Principal Angie George ("Ms. George") met to discuss a plan to investigate S.W.'s welfare and obtain help for the family. Third Am. Compl. ¶ 37, ECF No. 48. On October 11, 2013, Officer Wilson, Officer Slusser, and Officer John Stokes met with Plaintiffs and S.W. at their residence. *Id.* ¶ 38.

On October 15, 2013, S.W.'s father emailed Ms. Wagnon, informing her that S.W. was under the care of a psychologist and psychiatrist for depression, anxiety, and Asperger's Syndrome, and that more testing was being conducted regarding S.W.'s difficulties. *Id.* ¶ 39.

S.W.'s father asked Ms. Wagnon to notify him of the school's plans and accommodations for S.W. *Id.*

On January 7, 2014, S.W. was serving an in-school suspension ("ISS") in Ms. Wagnon's office. Defs.' Supp. Am. Mot., Ex. A (Baker Narrative), ECF No. 46-1. At approximately 9:15 a.m., school counselor Jennifer Bailey ("Ms. Bailey") summoned Officer Slusser to Ms. Wagnon's office. When he arrived, Officer Slusser observed S.W. scream at Ms. Wagnon and Ms. George and overturn two chairs.

Both Ms. Wagnon and Officer Slusser attempted to calm S.W. by telling him that everyone at the school cares about him, but he continued to scream about ISS and overturned a round table. Ms. Wagnon then attempted to calm S.W. by asking him to sit down and do his work, but he raised his right fist and punched Ms. Wagnon in the stomach. S.W. also stepped forward and kicked Ms. Wagnon in the leg. At one point, S.W. picked up a chair as Officer Slusser, Ms. George, and Ms. Wagnon continued to try to de-escalate the situation and "stood back and let [S.W.] have plenty of space." *Id.* S.W. let go of the chair but continued to complain. S.W. again attempted to pick up a chair to throw it but let it go after being told to put the chair down. S.W. screamed about how he was going to kill someone. *Id.* He then kicked Ms. Wagnon hard in the knee. During this incident, S.W. also pulled down his pants and undergarment, exposing himself. S.W. continued his tantrum as he picked up a jar of beans and threw it on the floor, breaking the jar. S.W. then began to cry and again screamed about how he was going to kill someone. *Id.*

On January 23, 2014, at approximately 9:08 a.m., S.W. returned to school after a lengthy absence. Third Am. Compl. ¶ 40, ECF No. 48. Ms. Wagnon brought Plaintiffs and S.W. to her office and showed them where S.W. would be working because she feared that the prior incident might be repeated. *Id.* As soon as S.W. arrived at Ms. Wagnon's office, S.W. indicated that he

would not cooperate with Ms. Wagnon and made rude remarks, including the use of profanity. *Id.* ¶ 42. S.W.'s parents left the school at 9:18 a.m. *Id.* ¶ 41. Ms. Wagnon then asked Ms. Bailey to assist her with S.W., and the two of them attempted to have S.W. work on a math assignment. *Id.*

When Ms. Wagnon offered to help S.W. with his assignment, he reacted violently. *Id.* ¶ 44. S.W. became visibly upset, continued uttering obscenities, "crumpled up the papers," and threw them on the floor along with his pencil. *Id.* Ms. Wagnon asked S.W. to read a book but he threw it off the table, screaming, "I don't care." *Id.* ¶ 46. At that time, S.W. stated, "I brought something in my backpack," adding it was for "self-defense." *Id.* ¶ 46. Ms. Wagnon then asked SRO Slusser to come to her office. *Id.* ¶ 45. At approximately 9:40 a.m., Ms. Wagnon asked the front office to contact Plaintiffs and ask them to come to the school. *Id.* ¶ 46.

Ms. Wagnon asked to see the weapon, but S.W. declined to show it. Defs.' Am. Mot., Ex. 1, ECF No. 26. S.W. indicated it was a weapon "deadly to squirrels, ants and other small animals." *Id.* Ms. Wagnon attempted to search the backpack, but S.W. pulled back and threw papers in her face. *Id.* He also threw a cup of coffee at her. Third Am. Compl. ¶ 47, ECF No. 48. According to Plaintiffs, S.W. produced what he called "home-built nun-chucks," which was a jump rope the school had given him as part of "Jump Rope for the Heart." *Id.*; Pls.' Resp. App. 91, ECF No. 54-1. Ms. Bailey said that the item "at first appeared to be a sling shot." Defs.' Am. Mot., Ex. 2, ECF No. 26. S.W. tried to hit Ms. Wagnon with the item. *Id.* at Ex. 1, ECF No. 26. SRO Slusser radioed Officer Baker, the highest ranking officer in the school district's SRO Unit, for backup. Third Am. Compl. ¶ 48, ECF No. 48.

Ms. Wagnon told S.W. that she would ask SRO Slusser to confiscate the item if he did not turn it over. *Id.* ¶ 49. S.W. refused, screamed obscenities, and then ran into the hallway. *Id.* ¶ 49; Defs.' Am. Mot., Ex. 1, ECF No. 26. At 9:47 a.m., Officer Baker entered the hallway and S.W.

continued to scream obscenities and twirled the home-built nun-chucks at Officer Baker. Defs.'
Am. Mot., Ex. 1, ECF No. 26. Officer Baker handcuffed S.W. and brought him back to Ms.
Wagnon's office. *Id.* The two officers tried to calm S.W. and told him that he was being placed in
handcuffs for his safety, and the safety of others. *Id.* at Ex. 2. Ms. Wagnon described S.W. as "out
of control." *Id.* at Ex. 1. Ms. Bailey also said that "[S.W.] never calmed down through the entire
incident." *Id.* Officer Baker forced S.W. into a chair and then sat in a chair "close to and directly
facing the student." Third Am. Compl. ¶ 51, ECF No. 48. Officer Baker shouted, "You want to act
like a punk, this is what happens to little punk kids." *Id.* ¶ 53. S.W. screamed back, to which Officer
Baker shouted, "You don't hit cops, you don't hit teachers. You understand? Sit down." *Id.* S.W.
shouted back, "I'm gonna . . . kill you." Defs.' Am. Mot., Ex. 4 (Video), at 09:49:13, ECF No. 34.
A female approached to clean S.W.'s face. Defs.' Second Am. Mot. 21, ECF No. 51. Officer Baker
warned S.W. "Don't you try and kick her, you understand. She's trying to wipe the snot from your
nose and the tears from your eyes, and you're gonna try to kick her." Third Am. Compl. ¶ 65, ECF
No. 48; Defs.' Am. Mot., Ex. 4 (Video), at 09:53:33, ECF No. 34. S.W. shouted, "I don't care."
*Id.* at 09:53:42. Officer Baker said, "Ok, that's fine. Then you can have snot in your nose and tears
from your eyes." Third Am. Compl. ¶ 65, ECF No. 48; Defs.' Am. Mot., Ex. 4 (Video), at
09:53:44, ECF No. 34. A witness said that Officer Baker engaged in a shouting match with S.W.
and that his face turned red and looked angry. Pls.' Resp. App. 14, ECF No. 54-1. Observers
commented that Officer Baker was taking things personally. *Id.* at 14–15.

        At 10:06 a.m., when Plaintiffs arrived at the school and saw S.W. in handcuffs, they
demanded that Officer Baker release S.W. Third Am. Compl. ¶¶ 71–72, ECF No. 48. S.W. had
been handcuffed for fifteen minutes. *Id.* ¶ 76. Martha Wilson told Officer Baker that "He has
autism." *Id.* ¶ 75. Officer Baker responded, "You know what, he has no sign on his head that says

'I have autism, I hit people.' You can't do that in a free society." Defs.' Am. Mot., Ex. 4 (Video), at 10:07:43, ECF No. 34. Mrs. Wilson protested, "He's eight years old." *Id.* at 10:07:48. Officer Baker replied, "Guess what? If you're eight or eighty, you can't do it. Not in this society." *Id.* at 10:07:50. Mrs. Wilson reiterated, "You handcuffed an eight year-old." *Id.* at 10:07:56; Third Am. Compl. ¶ 75, ECF No. 48. Mrs. Wilson and S.W. yelled at Officer Baker for laughing and demanded Officer Baker's information. Third Am. Compl. ¶ 78, ECF No. 48. Officer Baker demanded that Plaintiffs leave the school. *Id.* At 10:12 a.m., Plaintiffs left the school with S.W. being carried by his father. *Id.* ¶ 80.

Officer Baker declared that, on or before January 23, 2014, he had no actual knowledge that S.W. had any disability that qualified him as a special education student. Defs.' Supp. Am. Mot., Ex. B (Baker Decl.), ¶ 4, ECF No. 46-2. Officer Baker attested that "on or before January 23, 2014, Carroll Independent School District ("Carroll ISD") had not designated or recognized S.W. as having a disability that qualified him as a special education student and possessed no documentation supporting such a qualification." *Id.* ¶ 5.

To support their claims, Plaintiffs allege that Southlake is a Texas municipality and "was responsible for the implementation of relevant federal laws and the rules promulgated thereunder, as well as other statutory and constitutional mandates . . . so that citizens[,] like S.W., are treated commensurate with their needs." Third Am. Compl. ¶ 18, ECF No. 48. Plaintiffs also contend that Officer Baker "was to assure that disciplinary measures were applied uniformly and equitably, and to that end assure that the *due process* rights of students, like S.W., are protected at the school." *Id.* ¶ 19 (emphasis in original).

The Agreement between the City and Carroll ISD dictates that the City shall provide law enforcement training and certification, basic SRO training, a police vehicle and other police

equipment necessary to allow each officer to communicate with the City's Department of Public Safety and other officers. *Id.* ¶ 22. Plaintiffs contend that Southlake "failed to sufficiently train staff, like [Officer] Baker, in addressing the needs of a student with a disability like S.W. [and] thereby violated his rights pursuant to the Fourteenth Amendment." *Id.* ¶ 99. Plaintiffs also contend that Southlake "failed to sufficiently supervise staff, like [Officer] Baker, in addressing the needs of children in general and especially a student with a disability like S.W." *Id.* ¶ 100. Plaintiffs further allege that Southlake, by and through its "designees, including [Officer] Baker, had an actual policy, practice and custom of conscious and deliberate indifference to federal law" and "did not follow both federal and state law" "in regard to the treatment of a child with emotional and behavioral issues like S.W., and such failure was the moving force in the injuries to him." *Id.* ¶¶ 101–02.

Furthermore, Plaintiffs allege that the Memorandum of Understanding between Carroll ISD and Southlake Police Department provides that the SRO's purpose is limited to enforcement of the law, that SROs do not enforce school rules, and that their presence is not used to "persuade" compliance. *Id.* ¶ 21. Plaintiffs contend "[a]t no time during the incident were the Nonviolent Crisis Intervention (NCI) strategies employed." *Id.* ¶ 81. They further argue that Officer Baker's "spontaneous 'intervention' with S.W. was neither requested by the school administrators nor remotely congruent with the agreement between CISD and Southlake Police Department." *Id.* ¶ 82.

After the January 23, 2014 incident, the Southlake Police Department concluded that Officer Baker violated department policies and terminated his employment. *Id.* ¶¶ 92–93. According to Plaintiffs, the impact of Officer Baker's actions on S.W. are described by the family's counselor Gena Tidwell-Haley, LPC ("Ms. Tidwell-Haley") as follows: "the diagnosis of autism certainly existed prior to the incidents and police involvement at the elementary school and within

the [Plaintiffs'] home, the autism symptoms, mood disorder, and PTSD have been unequivocally intensified as the result of the occurrence of January 23, 2014." *Id.* ¶¶ 83, 94.

Based on the foregoing, Plaintiffs assert claims against the Southlake Defendants for: (1) violation of 42 U.S.C. § 1983; (2) due process violation under the Fourteenth Amendment; (3) unreasonable seizure and excessive force under the Fourth Amendment; (4) violation of the Rehabilitation Act of 1973; and (5) violation of the Americans with Disabilities Act (the "ADA"). Plaintiffs further assert that Defendant Southlake is liable because it ratified Officer Baker's actions.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

Federal Rule of Civil Procedure 8(a) requires a claim for relief to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 does not require detailed factual allegations, but "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In reviewing a Rule 12(b)(6) motion, the Court must accept all well-pleaded facts in the complaint as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). The Court is not bound to accept legal conclusions as true, and only a complaint that states a plausible claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678–79. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines whether they plausibly give rise to an entitlement to relief. *Id.*

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (citations omitted); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A court may also consider documents that a defendant attaches to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

**B.      Summary Judgment**

Summary judgment is proper when the pleadings and evidence on file show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material

fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant makes a showing that there is no genuine dispute as to any material fact by informing the court of the basis of its motion and by identifying the portions of the record that reveal no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c).

When reviewing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Id.* at 250.

### C.       Qualified Immunity

The doctrine of qualified immunity protects government officials sued pursuant to 42 U.S.C. § 1983 "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Id.* This doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Courts generally apply the two-pronged analysis established in *Saucier v. Katz*, 533 U.S. 194 (2001), in determining whether a government official is entitled to qualified immunity for an alleged constitutional violation. The first prong of *Saucier* asks whether the facts alleged or shown are sufficient to make out a violation of a constitutional or federal statutory right. *Id.* at 201. If no violation is established in the pleadings or the record, no further inquiry is necessary. But if the plaintiff pleads, or shows in the record, the violation of a constitutional or federal statutory right, the Court then asks whether that right was clearly established at the time of the government official's alleged misconduct. *Id.* If sufficient allegations or evidence to support the violation of a constitutional right exist, the court asks whether, nevertheless, qualified immunity is appropriate because defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question." *Hampton Co. Nat'l Sur., L.L.C. v. Tunica Cnty, Miss.,* 543 F.3d 221, 225 (5th Cir. 2008). The Supreme Court has clarified that it is no longer mandatory for courts to consider the two prongs set out in *Saucier* in order, although the Court noted that it may be beneficial to do so. *Pearson*, 555 U.S. at 236. Under *Pearson*, courts are now permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Id.*

**D.     Municipal Liability**

To state a claim under Section 1983, a plaintiff must allege (1) that there was a violation of the United States Constitution or federal law and (2) that the violation was committed by someone acting under color of state law. *See Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 252–53 (5th Cir. 2005). A municipality cannot be held vicariously liable under Section 1983 under a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, a municipality can only be liable for its unconstitutional policies or customs. *Id.* at 694–95. Thus, to

state a claim for damages against the City of Southlake, Plaintiffs must allege that the municipality directly violated a constitutional right, the moving force of which was an official policy or custom created by a policymaker with final policymaking authority. *Rivera v. Hous. Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). The Section 1983 pleading standard, requiring plaintiffs to "plead specific facts with sufficient particularity to meet all the elements of recovery," applies to allegations of municipal custom or policy. *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). "The description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts." *G.M. ex rel. Lopez v. Shelton*, No. 14-10440, 2014 WL 6735114, at *2 (5th Cir. Dec. 1, 2014) (quoting *Spiller v. City of Tex. City, Police Dep't*, 130 F.3d 162, 167 (5th Cir. 1997)).

To survive the motion to dismiss, Plaintiffs must allege that the school district maintained an unconstitutional policy or custom. *Rivera*, 349 F.3d at 247. Thus, Plaintiffs must allege that there exists either: (1) an official statement or decision adopted by the board; or (2) a "persistent, widespread practice of [district] officials or employees" that is "so common and well settled as to constitute a custom" that fairly represents Carroll ISD policy. Actual or constructive knowledge of such custom must be attributable to the governing body of Carroll ISD or to an official to whom that body had delegated policy-making authority. *Cf. Yara v. Perryton Indep. Sch. Dist.*, No. 2-12-CV-117-J, 2013 WL 1497049, at *4 (N.D. Tex. Apr. 10, 2013) (Robinson, J.) *aff'd*, 560 F. App'x 356 (5th Cir. 2014) (quoting *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992)).

It is well-settled that an isolated, unconstitutional incident is generally insufficient to establish an official policy or custom for Section 1983 purposes. *Bolton v. City of Dall.*, 541 F.3d 545, 548 (5th Cir. 2008); *Petrie v. City of Grapevine*, 904 F. Supp. 2d 569, 586 (N.D. Tex. 2012) (Lynn, J.) *aff'd sub nom. Petrie v. Salame*, 546 F. App'x 466 (5th Cir. 2013). "[O]nly in the

'extremely narrow' circumstance in which the decisionmaker is also a 'final policymaker'" may a single decision by a policymaker constitute official policy. *Petrie*, 904 F. Supp. 2d at 586 (citing *Bolton*, 541 F.3d at 548). Accordingly, when the plaintiff alleges that a single decision constitutes policy, the "court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *Bolton*, 541 F.3d at 548 (quoting *McMillian v. Monroe Cnty.*, 520 U.S. 781, 784–85 (1997); *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)). Additionally, a plaintiff must point to evidence in the record which raises a genuine dispute of material fact on these elements to defeat a motion for summary judgment. *See supra* Part II(B).

## III. ANALYSIS

### A. 42 U.S.C. § 1983 Civil Rights Claims

#### 1. Claims Against Southlake Defendants

Plaintiffs' argue that the Southlake Defendants violated the Fourteenth Amendment when Officer Baker handcuffed S.W., thereby restricting his "liberty interest." Pls.' Resp. ¶ 47, ECF No. 54. Defendants argue that Plaintiffs' complaint is "wholly inadequate to sustain a Fourteenth Amendment due process claim" and that Plaintiffs have failed to "explain why S.W.'s detention should be analyzed under the Fourteenth Amendment instead of the Fourth Amendment." Defs.' Reply ¶¶ 6, 7, ECF No 57. For the reasons stated below, the Court finds that this claim should be analyzed under the Fourth Amendment.

The Supreme Court has held that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for

analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*, 490 U.S. at 395 (internal quotation marks omitted)). The Fifth Circuit has previously decided that a plaintiff's Section 1983 claim for illegal arrest and detention is properly considered under the Fourth Amendment, not the Fourteenth Amendment. *Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir. 1994).

Plaintiffs argue that "S.W. has alleged his liberty interest was restricted when he was handcuffed by Baker;" S.W. has also alleged that Southlake Defendants violated his constitutional right to be free from illegal and unwarranted seizures, without due process of law. Pls.' Resp. ¶ 47, ECF No. 54. The Court finds as a matter of law that Plaintiffs have alleged a Fourth Amendment violation, rather than a more generalized substantive due process violation. Accordingly, Southlake Defendants motion to dismiss Plaintiffs' due process claim under the Fourteenth Amendment is **GRANTED.**

### 2.   Failure to Train or Supervise Claim Against Southlake

Plaintiffs assert a claim for municipal liability against Southlake for failure to train and supervise Officer Baker. Third Am. Compl. ¶¶ 99–102, ECF No. 48. Defendants argue that Plaintiffs have not pleaded or offered evidence of an unconstitutional policy, practice, or custom implemented by a final policymaker, as required by Section 1983. Defs.' Second Am. Mot. ¶¶ 104–09, ECF No. 51. In their response, Plaintiffs reiterate their allegations from the complaint. Pls.' Resp. ¶¶ 36–46, ECF No. 54.

A municipality cannot be vicariously liable under Section 1983 for the actions of its employees.  Instead, it may be held liable under Section 1983 only if a policy or custom of the municipality was implemented by a final policymaker and was the moving force behind the violation of the plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436

U.S. 658, 694 (1978). Thus, "municipal liability under Section 1983 requires proof of three elements: (1) a policymaker; (2) an official policy; and (3) [a] violation of constitutional rights whose moving force is the policy or custom." *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012) (citing *Hampton Co. Nat'l Sur., LLC v. Tunica Cty.*, 543 F.3d 221, 227 (5th Cir. 2008)). When a plaintiff alleges failure to train, the plaintiff must show that the "city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989).

Alleging a supervisor failed to train or supervise requires a plaintiff to show "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). To show deliberate indifference, a plaintiff must usually demonstrate that a supervisor knew of a pattern of violations. *Id.*

In this case, Plaintiffs have not pleaded any facts showing a pre-existing pattern of violations or a failure to train by Southlake or any of its supervisors. Instead, they allege only that Officer Baker and other SROs mistreated their son on January 23, 2014. Plaintiffs have not pleaded any facts describing how officers were trained and supervised; how that training and supervision was inadequate; or how that training and supervision led to a pattern of violations. Rather, Plaintiffs list isolated actions by Officer Baker on January 23 and a formulaic recitation of the elements of a claim for failure to train or supervise. Third Am. Compl. ¶¶ 99–102, ECF No. 48. As Plaintiffs' complaint fails to allege facts relating to a policymaker, official policy, or how the official policy caused their injuries, they have failed to state a claim.

The Supreme Court has provided that a single incident could give rise to liability for failure to train. *City of Canton*, 489 U.S. at 391. This exception is limited to the rare situation in which "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under Section 1983 without proof of a pre-existing pattern of violations." *Connick v. Thompson*, 563 U.S. 51, 64 (2011).

Here, no facts are alleged that suggest that Southlake failed to train its employees with "deliberate indifference to the rights of its inhabitants" or that the constitutional consequences of such a failure are "so patently obvious" that it would require Section 1983 liability. *City of Canton*, 489 U.S. at 389. Both would be necessary to show a policy or custom that is actionable under Section 1983 absent a pattern of pre-existing violations. *Id.* The complaint is silent as to facts of prior complaints of constitutional violations by any SRO, much less Officer Baker. No pleaded facts lead the Court to reasonably infer a causal connection between Southlake's policies—or lack thereof—and Officer Baker's actions to subdue S.W. Likewise, Plaintiffs pleaded no facts that would establish Southlake or any supervisor was deliberately indifferent in failing to supervise Officer Baker.

Accordingly, Defendants' motion to dismiss Plaintiffs' Section 1983 claims against Southlake for failure to train or supervise Officer Baker is **GRANTED**.

Alternatively, even if the Third Amended Complaint was sufficient to assert this claim, there is no genuine dispute of material fact, and summary judgment is proper.[1] On a Rule 56 no

---

[1] Having considered the undisputed facts submitted, the Court determines that Plaintiffs' claims may be resolved as a matter of law. "[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte,* so long as the losing party was on notice that she had to come forward with all of her evidence." *Atkins v. Salazar*, 677 F.3d 667, 678 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). Here, Plaintiffs acknowledged in their response that Defendants were moving for summary judgment and were therefore on notice to oppose the summary judgment request.

evidence motion for summary judgment, the moving party bears the burden "to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof." *Celotex*, 477 U.S. at 325. The moving party may satisfy this burden by pointing out that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the nonmovant then fails to establish the existence of an essential element of its case, the court must grant summary judgment. *Hernandez v. Igloo Prod. Corp. Retirement Plan*, 868 F. Supp. 200, 204 (S.D. Tex. 1994).

Defendants have satisfied their burden by stating "Plaintiffs have not pleaded facts establishing that a Southlake final policymaker implemented an unconstitutional policy/custom that caused the alleged injury or that a Southlake policymaker knowingly ceded policymaking authority to Officer Baker to commit the constitutional tort." Defs.' Second Am. Mot. 29, ECF No. 51. The burden therefore shifts to Plaintiffs to offer "specific, non-conclusory affidavits or other competent summary judgment evidence" to show a genuine dispute of material fact. *Reese v. Anderson*, 926 F.2d 494, 498 (5th Cir. 1991).

The evidence presented here does not create a genuine dispute of material fact regarding any of the elements of a failure to train or supervise claim. Additionally, Plaintiffs do not provide any evidence of a single incident exception raising an inference that the City of Southlake engaged in deliberate indifference. 489 U.S. at 378–90. Plaintiffs' response to the Defendants motion simply reiterates the conclusory allegations of the third amended complaint and only cites to Officer Baker's service record, training history, and the recording of the incident. *See* Pls.' Resp.

---

Resp. Second Am. Mot. ¶ 8, ECF No. 54; *see also Apache Corp. v. W & T Offshore, Inc.*, 626 F.3d 789, 798–99 (5th Cir. 2010) (affirming district court's summary judgment analysis as proper where parties had "ample notice and opportunity to object to the scope of relief prayed for"). Therefore, analyzing Plaintiffs' claims under the summary judgment standard is appropriate.

¶¶ 33–46, ECF No. 54. Indeed, this record shows that Officer Baker was trained in specific school-related policing procedures, and he completed a 40-hour SRO training course in 2013. Pls.' Resp. App. 24 (Baker Service Record), ECF No. 54-1. Plaintiffs have failed to provide evidence of either (1) a failure to provide adequate training in light of foreseeable serious consequences that could result from the lack of instruction; or (2) where Southlake failed to act in response to repeated complaints of constitutional violations by its officers. *City of Canton*, 489 U.S. at 390. Because Plaintiffs have not created a genuine dispute of material fact regarding any of the elements of a failure to train or supervise claim, Defendants' alternative motion for summary judgment is **GRANTED.**

### 3. Section 1983 Claims Against Officer Baker

Plaintiffs sue Officer Baker, in his individual capacity, for violations of the due process clause of the Fourteenth Amendment, and for unreasonable seizure and excessive force under the Fourth Amendment. Third Am. Compl. ¶¶ 105–06, ECF No. 48. Officer Baker moves to dismiss these claims on the basis of qualified immunity. Defs.' Second Am. Mot. ¶¶ 135–40, ECF No. 51.

Plaintiffs' allege that Officer Baker violated S.W.'s Fourteenth Amendment liberty interest when he handcuffed S.W. Pls.' Resp. ¶ 47, ECF No. 54. The Court construes this allegation as a violation a of S.W.'s substantive due process rights. For the reasons stated *supra* in Part III(A)(1), and for the reasons stated below, the Court finds that the claims concerning the handcuffing of S.W. are properly analyzed under the Fourth Amendment, not the Fourteenth Amendment.

In *Graham v. Connor*, the Supreme Court directed courts to analyze all allegations of excessive force under a more specific constitutional provision, *i.e.*, the Fourth Amendment's "reasonableness" standard, rather than under a more generalized substantive due process approach. 490 U.S. 386, 394 (1989). The *Graham* rule is grounded in the notion that "[w]here a particular

Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*, 490 U.S. at 395 (internal quotation marks omitted). The Fifth Circuit has previously decided that a plaintiff's Section 1983 claim for illegal arrest and detention was properly considered under the Fourth Amendment, rather than the Fourteenth Amendment. *Blackwell v. Barton*, 34 F.3d 298, 302 (5th Cir. 1994). Therefore, the Court will analyze Plaintiffs' claims against Officer Baker for handcuffing S.W. as Fourth Amendment claims.

### a. Unreasonable Seizure Claim

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable . . . seizures" of their person. *Terry v. Ohio*, 392 U.S. 1, 8 (1968) (citing U.S. CONST. amend. IV). A seizure may include physical restraint or "the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980); *see also Terry*, 392 U.S. at 16 ("[W]henever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."). The Fourth Amendment requires the officer to be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21.

Plaintiffs allege Officer Baker unreasonably seized S.W. by handcuffing him. Third Am. Compl. ¶ 105, ECF No. 48. Officer Baker asserts the affirmative defense of qualified immunity. Defs.' Second Am. Mot. ¶ 135, ECF No. 51. Qualified immunity shields public officials, like the officers here, from suit unless their conduct was unreasonable in light of clearly established law. *Milligan v. City of Slidell*, 226 F.3d 652, 654 (5th Cir. 2000) (citing *Elder v. Holloway,* 510 U.S.

510, 516 (1994)). To overcome qualified immunity, Plaintiffs must allege sufficient facts supporting a claim that Officer Baker violated S.W.'s Fourth Amendment right by handcuffing him. *Saucier*, 533 U.S. at 201.

It is undisputed here that Officer Baker seized S.W. Defs.' Second Am. Mot. ¶ 125, ECF No. 51. The central inquiry then is whether handcuffing S.W. was justified at its inception and reasonable in light of all of the circumstances. *See Hassan ex rel. Hassan v. Lubbock Indep. Sch. Dist.*, 55 F.3d 1075, 1079–80 (5th Cir. 1995). "To assess the reasonableness of a search or seizure, courts balance the governmental interest against the invasion which the search or seizure entails." *Milligan*, 226 F.3d at 654 (citing *Terry*, 392 U.S. at 20–21). "Fourth Amendment rights . . . are different in public schools than elsewhere; the 'reasonableness' inquiry cannot disregard the schools' custodial and tutelary responsibility for children." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 656 (1995). "[A]lthough the Fourth Amendment applies in schools, the nature of those rights is what is appropriate for children in school." *Milligan*, 226 F.3d at 654–55. The central inquiry under the Fourth Amendment is whether a seizure is reasonably justified under all the circumstances. *Id.*; *Ohio v. Robinette*, 519 U.S. 33, 39 (1996); *Terry*, 392 U.S. at 19, 20.

The Fourth Amendment requires that an officer seize a person by "reasonable" means, not the least restrictive means. *See Milligan*, 226 F.3d at 655. Plaintiffs argue that the "seizure of S.W. was unreasonable in light of totality of the circumstances." Third. Am. Compl. ¶ 105, ECF No. 48. Officer Baker argues his actions were reasonable because S.W. claimed to have a weapon, assaulted Ms. Wagnon, and threatened to assault others. Defs.' Second Am. Mot. ¶ 125, ECF No. 51.

Plaintiffs' pleaded that at 9:47 a.m. Officer "Baker entered the [] building and immediately handcuffed S.W. and took the 'nun-chucks' away from him." Third. Am. Compl. ¶ 50, ECF No.

48. After Officer Baker handcuffed S.W., "Baker sat S.W. in a chair and then sat in a chair close to and directly facing" him. *Id.* ¶ 51. The entire incident ended, S.W. was released from custody, and he left the school with his parents at 10:12 a.m. *Id.* ¶¶ 71, 80. From these facts, S.W. was restrained for less than twenty minutes, and only after throwing hot coffee at Ms. Wagnon and threatening school staff with the "home-built nun-chucks." *Id.* ¶¶ 46–50, 71. Plaintiffs have not alleged that while originally permitted, the handcuffing lasted longer than necessary. *See* Third Am. Compl. ¶¶ 103–06, ECF No. 48.

Courts have rejected claims of unreasonable detention when an officer detained students who have made threats or were a danger. *See Hassan*, 55 F.3d 1075, 1079–80 (rejecting a claim for unreasonable seizure where school officials restrained misbehaving student for fifty minutes while class was touring a juvenile justice center on a field trip); *Campbell v. McAlister*, 1998 WL 770706, at *1, 3 (5th Cir. 1998) (finding no Fourth Amendment violation where a specially assigned police officer removed a disruptive kindergarten student from the classroom and attempted to subdue him on the way to the principal's office); *Valentino C. v. Sch. Dist. of Philadelphia*, 2003 WL 177210 at *6 (E.D. Pa. 2003) (finding no unreasonable seizure where school officials had a student detained and arrested for holding a chair above his head and threatening teacher); *EC ex rel. RC v. Cnty. of Suffolk*, 882 F. Supp. 2d 323, 346 (E.D.N.Y. 2012) (holding that school security guards did not unreasonably seize a disabled middle school student by holding the student's arms by his side and forcing him into a seated position when the student was throwing rocks and attempting to punch officers).

The Court finds that handcuffing S.W. was not unreasonable and not for too long in light of the pleaded facts. Accordingly, Plaintiffs have failed to plead a violation of S.W.'s constitutional right to be free from unreasonable seizure. Therefore, Plaintiffs cannot defeat Officer Baker's

qualified immunity defense under the first prong of *Saucier*. *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity"). As a result, Defendants' motion to dismiss Plaintiffs' unreasonable seizure claim is hereby **GRANTED.**

Alternatively, assuming Plaintiffs have adequately pleaded facts sufficient to overcome Officer Baker's qualified immunity, summary judgment is proper because no genuine dispute of material fact exists on this issue, and he is entitled to judgment as a matter of law.

Officer Baker argues that "S.W. had already claimed to have a weapon, used obscenities, thrown multiple items, including a book, pencils, and a cup of coffee, produced the weapon, and entered the hallway outside [Ms. Wagnon's] office with the weapon." Defs.' Second Am. Mot. ¶ 120, ECF No. 51 (citing Third Am. Compl. ¶ 44–49).[2] He further argues that "S.W. had physically assaulted [Ms. Wagnon] with the weapon, hit and kicked [Ms. Wagnon], thrown a cup of hot coffee at [Ms. Wagnon], and threatened to assault others." *Id.* Additionally, Officer Baker was aware of the prior incident on January 7, 2014, wherein S.W. exhibited a similar pattern of violent behavior. *Id.* ¶¶ 121–22; Defs.' Supp. Am. Mot., Ex. A (Slusser Narrative), ECF No. 46-2 (signed by Officer Baker as SRO supervisor). In light of these facts, they argue that Officer Baker's handcuffing of S.W. was objectively reasonable to "mitigate any further harm and prevent S.W. from making good on his threats" because calming tactics previously failed to work. *Id.* ¶¶ 122– 23.

---

[2] Plaintiffs' description of the January 23 incident in their third amended complaint amounts to a judicial admission that S.W. had engaged in the behavior outlined above. *See* Third. Am. Compl. ¶¶ 44–49, ECF No. 48. "A judicial admission is a formal concession in the pleadings or stipulations by a party or counsel that is binding on the party making them. Although a judicial admission is not itself evidence, it has the effect of withdrawing a fact from contention." *Martinez v. Bally's Louisiana, Inc.*, 244 F.3d 474, 476 (5th Cir. 2001).

Plaintiffs respond that S.W.'s seizure was unreasonable in light of his age and behavioral disabilities. *See* Pls.' Resp. 14–15, ECF No. 54. Plaintiffs also argue that Officer Baker failed to assess the situation and use de-escalating verbal techniques or less restrictive alternatives. *Id.* at 15. Plaintiffs further note that Officer Baker admitted that he acted based on the previous incident, casting doubt on Officer Baker's claim that his actions were predicated upon exigent circumstances. *Id.*

The summary judgment evidence shows that S.W. brought what he described as "home-built nun-chucks" to the school. While the parties dispute whether this was a weapon, it is undisputed that S.W. attempted to hit Ms. Wagnon and threatened to do physical harm to others with it.[3] Pls.' Resp. ¶ 24, ECF No. 54; Defs.' App., Ex. 2, ECF No. 26. Officer Baker therefore placed S.W. in handcuffs for S.W.'s safety, as well as the safety of himself and others. Defs.' Second Am. Mot. ¶ 122, ECF No. 51; Pls.' Resp. App., Ex. B (Internal Affairs Investigation Report) at 5, ECF No. 54-1. There is no dispute of fact that Officer Baker released S.W. soon after Plaintiffs arrived and calmed S.W., and there is no allegation that the handcuffing lasted longer than necessary apart from he should not have been handcuffed at all. *See* Third Am. Compl. ¶¶ 105–06, ECF No. 48; Defs.' Am. Mot., Ex. 4 (Video), at 10:07:28–43, ECF No. 34.

The Court finds that the summary judgment evidence presented demonstrates that no constitutional right was violated because Officer Baker acted reasonably in handcuffing S.W. in light of the circumstances. Further, the evidence does not demonstrate that S.W. was handcuffed for longer than necessary to secure the safety of officers and others present. Plaintiffs have

---

[3] The Court does not find that the difference in nomenclature used by the parties to describe S.W.'s device creates a genuine issue of material fact. The evidence shows that S.W. told school staff that the device in his backpack was "not deadly to humans, just small animals" and that he pulled it out and "twirled it" at a staffer in a threatening manner. Defs.' App., Ex. 1 (Wagnon Statement), ECF No. 26. There is no evidence to contradict S.W. used it in this fashion.

therefore not produced evidence to establish a fact issue on their unreasonable seizure claim under the first prong of *Saucier*. Accordingly, Defendants' alternative motion for summary judgment is therefore **GRANTED.**

### b. Excessive Force Claim

To establish a Fourth Amendment violation based on excessive force, Plaintiff must show: "(1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable." *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (citing *Rockwell v. Brown*, 664 F.3d 985, 991 (5th Cir. 2011)). "Whether the force was reasonable under the Fourth Amendment is determined from the perspective of a reasonable officer on the scene, rather than with 'the 20/20 vision of hindsight.'" *Ramirez v. Martinez*, 716 F.3d 369, 377 (5th Cir. 2013) (quoting *Rockwell v. Brown,* 664 F.3d 985, 991 (5th Cir. 2011)). To determine reasonableness, the Court considers "the severity of the crime at issue, whether the suspect poses a threat to the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Katz*, 533 U.S. at 195 (citing *Graham,* 490 U.S. at 396).

Officer Baker is entitled to qualified immunity on this claim because the pleaded facts show the use of force was not clearly excessive to the circumstances presented.  Plaintiffs do not allege that Defendants struck S.W.; assaulted S.W. once he was handcuffed; or otherwise used the kind of malicious force that is often alleged when officers are not entitled to qualified immunity. *See Brown v. Lynch*, 524 F. App'x 69, 79–80 (5th Cir. 2013) (denying qualified immunity where video showed officers striking subject of investigatory stop who was not actively resisting); *Ramirez v. Martinez*, 716 F.3d 369, 378–79 (denying qualified immunity where alleged officers tased a suspect twice, once after handcuffing him); *Hale v. Townley*, 45 F.3d 914, 918 (5th Cir. 1995)

(denying qualified immunity where plaintiff alleged officer "kicked [plaintiff], rammed his fist into [plaintiff's] testicles, and repeatedly tried to smash [plaintiff's] head into the car"). Instead, they contend the force was unreasonable due to S.W.'s age and disability. Third Am. Compl. ¶ 106, ECF No. 48. The pleaded facts here show that the initial use of force was not unreasonable or unprovoked because Officer Baker was responding to a call about a child acting wildly and making threats to school staff. *Id.* ¶¶ 45–48. Nor was the force employed longer than necessary based on the pleaded facts.

The Court has found that it was reasonable for Officer Baker to believe that S.W. presented a threat and therefore handcuffed him. *See supra* Part III(A)(3)(a). Given these circumstances, Officer Baker's decision to handcuff and restrain S.W. was not excessive. Accordingly, the Court finds that based on the facts pleaded it was reasonable for Officer Baker to believe the amount of force used was lawful. Officer Baker is therefore entitled to qualified immunity as to Plaintiff's excessive force claims because Plaintiffs have not established a violation of S.W.'s constitutional rights under the first prong of *Saucier*. *See Saucier*, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity"). Accordingly, Defendants' motion to dismiss Plaintiffs' excessive force claim is **GRANTED.**

In the alternative, summary judgment is proper on this claim. As stated above, the standard for a Rule 56 no evidence motion for summary judgment requires the moving party "to produce evidence showing the absence of a genuine issue of material fact, even with respect to an issue on which the nonmoving party bears the burden of proof." *Celotex*, 477 U.S. at 325. The moving party may satisfy this burden by pointing out that "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the nonmovant then fails to establish the

existence of an essential element of its case, the court must grant summary judgment. *Hernandez*, 868 F. Supp. at 204.

Defendants have met their burden and argue "Plaintiffs provide no specific description of any particular injury or harm S.W. suffered from Officer Baker's alleged excessive force." Defs.' Second Am. Mot. ¶ 126, ECF No. 51. As stated above, Plaintiffs must establish an injury or harm that resulted from excessive force. *Ramirez*, 716 F.3d at 377. The only description of injury or harm is contained in the third amended complaint where Plaintiffs allege S.W.'s autistic behavior "intensified" and post-traumatic stress disorder symptoms occur "when driving past Carroll Elementary or a police vehicle." Third Am. Compl. ¶ 94, ECF No. 48. While they pleaded this injury, Plaintiffs provide no evidence to support this claim of injury, or any claim of injury, as required by Rule 56. As Plaintiffs have failed to come forward with competent summary judgment evidence sufficient to raise a material issue of fact regarding injury or harm—a necessary element—summary judgment is proper. Defendants' alternative motion for summary judgment is therefore **GRANTED.**

### B.      ADA and Rehabilitation Act Claims

Plaintiffs also assert ADA and Rehabilitation Act claims based on S.W.'s mental disability. Section 504 of the Rehabilitation Act of 1973 prohibits recipients of federal financial assistance from discriminating on the basis of disability. Rehabilitation Act of 1973, Pub. L. No. 93-112, § 504, 87 Stat. 394 (1973) (codified at 29 U.S.C. § 701). To establish a prima facie case under the Rehabilitation Act, a plaintiff must raise sufficient factual allegations to show he (1) was an individual with a disability under the Act; (2) was otherwise qualified; (3) was discriminated

against solely because of his disability; and (4) the program or activity in question receives federal funding. *Chandler v. City of Dall.*, 2 F.3d 1385, 1390 (5th Cir. 1993).

Similarly, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA provides that "no qualified individual with a disability shall, by any reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To allege a prima facie claim under the ADA, a plaintiff must prove that (1) he is a qualified individual within the meaning of the ADA; (2) he is being excluded from participation in, or being denied benefits of, services, programs, or activities for which the public entity is responsible, or is otherwise being discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination is by reason of his disability. *Melton v. Dall. Area Rapid Transit*, 391 F.3d 669, 671–72 (5th Cir. 2004).

The Fifth Circuit has recognized that the language of Title II of the ADA generally tracks the language of Section 504 of the Rehabilitation Act, and that Congress intended Title II to extend the protections of the Rehabilitation Act to state and local government programs. *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000). Thus, the evaluation of a plaintiff's claim for disability discrimination under the ADA and the Rehabilitation Act are substantially the same, and "[j]urisprudence interpreting either section is applicable to both." *Id.* "The only material difference between the two provisions lies in their respective causation requirements." *Bennett-Nelson v. Louisiana Bd. of Regents*, 431 F.3d 448, 454 (5th Cir. 2005). Under the ADA, "discrimination need not be the sole reason," for the exclusion [] or denial of benefits to the plaintiff, while the Rehabilitation Act requires a plaintiff to demonstrate that he or she was discriminated against

"solely by reason of her or his disability." *Bennett-Nelson*, 431 F.3d at 454; *see also Soledad v. United States Dep't of Treasury*, 304 F.3d 500, 503–04 (5th Cir. 2002). The Fifth Circuit nevertheless carved out an exception to the ADA for police officers who are presented with exigent circumstances. *See Hainze*, 207 F.3d at 801 ("To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose unnecessary risk to innocents."). Accordingly, the Court will analyze Plaintiffs' ADA and Rehabilitation Act claims together.

In addressing the *Hainze* exception in their response, Plaintiffs argue that "clearly an eight year old child with a jump rope can hardly create the level of life-threatening and imminent concern" that would justify its application. Pls.' Resp. ¶ 69, ECF No. 54. Plaintiffs further contend that *Van Velzor* should limit the applicability of the *Hainze* exception in this case. *Id.* ¶ 68 (citing *Van Velzor v. City of Burleson*, 43 F. Supp. 3d 746, 759 (N.D. Tex. 2014) ( "The *Hainze* exception is applied narrowly, only in situations that legitimately present a threat of imminent danger and call for this sort of instantons decision-making.")). The court in *Van Velzor* refused to apply the *Hainze* exception where a disabled plaintiff brought an ADA action against a city for failure to enforce disability-related parking laws. 43 F. Supp. 3d at 749–50. There, the court recognized the narrowness of the *Hainze* exception as only applicable to situations that present an imminent threat of danger to officers, and found that it did not apply to "routine police enforcement of traffic and parking laws." *Id.* at 759. The Court agrees that the facts of *Van Velzor* do not fall under the *Hainze* exception, but the threats and physical contact between teacher and student in this case are a significant departure from the peaceful attempts at parking enforcement described in *Van Velzor*. The Court finds Plaintiffs' argument unpersuasive that *Van Velzor* precludes the application of the

*Hainze* exception in this case. While the Court agrees that the *Hainze* exception should be applied narrowly, the facts of this case fall within the type of police enforcement that the Fifth Circuit originally carved out the exception to address.

Here, it is undisputed that S.W. used the "home-made nun-chucks" as a weapon and threatened to assault teachers with them. It is also undisputed that S.W. had already hit, kicked, and thrown hot coffee at Ms. Wagnon. Third Am. Compl. ¶¶ 44–47, ECF No. 48; Defs.' Second Am. Mot. ¶ 120–22, ECF No. 51. S.W. was becoming more violent and Officer Slusser contacted Officer Baker for backup. Third Am Compl. ¶ 48, ECF No. 48. These facts indicate an exigency and Officer Baker felt it necessary to subdue S.W. to secure "the safety of [himself], other officers, and any nearby civilians." *Hainze*, 207 F.3d at 801; Pls.' Resp. App., Ex. B (Internal Affairs Investigation Report) at 5, ECF No. 54-1; *cf. Rockwell v. City of Garland*, 2013 WL 4223223, at *6–7 (N.D. Tex. 2013) (finding that the *Hainze* exception shielded officers from ADA liability where officers entered the room of, and shot, a schizophrenic man who was known to have a weapon and had been verbally threatening officers); *Lincoln v. City of Colleyville*, 2016 WL 8710478, at *6 (N.D. Tex. 2016) (holding that the ADA and Rehabilitation Act do not apply "in the face of exigent circumstances; nor do they apply to responses to reported disturbances, whether or not those calls involve subjects with mental disabilities, before the officers secure the scene and insure that there is no threat to human life.").

The Court finds that no dispute of fact exists that the *Hainze* exception to ADA and Rehabilitation Act liability applies to this case. Requiring Officer Baker to inquire as to the disability status of a child before attempting to secure the disruption would "pose an unnecessary risk to innocents." *Hainze*, 207 F.3d at 801. Accordingly, Defendants' motion for summary judgment on Plaintiffs' ADA and Rehabilitation Act claims is hereby **GRANTED**.

### C.      Ratification Against Southlake

Finally, Plaintiffs contend that Southlake, through the Southlake Police Department, "ratified the acts, omissions and customs of their personnel and staff." Third Am. Compl. ¶ 122, ECF No. 48. Defendant Southlake argues that Plaintiffs failed to plead sufficient facts to meet the Rule 8 pleading requirements of ratification. Defs.' Second Am. Mot. ¶ 147, ECF No. 51; Fed. R. Civ. P. 8. Plaintiffs do not respond to any of the assertions made by Defendants about ratification in their response brief. *See* Pls.' Resp., ECF No. 54.

The Supreme Court established the test to determine whether a municipality can be liable for an employee's actions:

> When a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

*City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). The theory of ratification is not a theory of respondeat superior. *Peterson v. City of Fort Worth*, 2008 WL 440301, at *14 (N.D. Tex. 2008) (Means, J.), (citing *Milam v. City of San Antonio*, 113 Fed. Appx. 622, 627 (5th Cir. 2004)), *aff'd* 588 F.3d 838 (5th Cir. 2009). For example, the mere failure to investigate a subordinate's decision that violated a person's constitutional rights does not amount to ratification. *Milam*, 113 Fed. Appx. at 627. But neither does the investigation and exoneration of the subordinate for violating city policy constitute ratification. *See Peterson*, 2008 WL 440301, at *14.

The Fifth Circuit has held ratification exists only in "extreme factual situations." *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009); *Compare Synder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (finding no ratification where officer shot a fleeing suspect in the back) *with Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) (finding ratification in a case where

officers "poured" gunfire onto a truck and killed an innocent occupant). This case does not present an "extreme factual situation." Officer Baker was called to assist in subduing an agitated boy and believed the boy was a danger to his own safety as well as the safety of others. Upon arrival, Officer Baker assessed the situation and handcuffed S.W. to a chair for a short time until his parents arrived. These facts, while not normal in a day in the life of an SRO, do not rise to the level of "extreme" recognized by the Fifth Circuit.

Plaintiffs also did not present any evidence showing that Southlake ratified Officer Baker's actions. Indeed, it is uncontested that Southlake launched an internal affairs investigation into Officer Baker's actions and based on that investigation fired him. *See* Defs.' Second Am. Mot. ¶ 149, ECF No. 51; Pls.' Resp. App. 36, ECF No. 54-1. The memorandum informing Officer Baker of his termination, written by the Southlake Chief of Police, expressly stated that the city fired Officer Baker for his "inexcusable behavior with the student." *Id.* Plaintiffs' own evidence therefore negates any ratification claim.

Accordingly, Defendant's motion for summary judgment is **GRANTED** as to Plaintiffs' theory of liability by ratification.

## IV.   CONCLUSION

For the reasons stated above, the Court finds that Defendants Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (ECF No. 51) should be and is hereby **GRANTED** in its entirety.

Courts usually provide a litigant leave to amend to cure pleading deficiencies. *Hart v. Bayer Corp.*, 199 F.3d 239, 247–48 n.6 (5th Cir. 2000). When a plaintiff does not file a response to a motion to dismiss or request leave to amend however, a court may deny plaintiff leave to amend. *Bueno Invs., Inc. v. Depositors Ins. Co.*, 2016 WL 1621619, at *3 (W.D. Tex. 2016). In

this case, Plaintiffs did not request leave to amend in their Third Amended Complaint.

Accordingly, Plaintiffs' claims are **DISMISSED with prejudice** to refiling of the same.

      **SO ORDERED** this **28th day** of **November, 2017.**


Reed O'Connor
**UNITED STATES DISTRICT JUDGE**